UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BENSON PHILLIP GATU NJUGUNA,
*Plaintiff*,

v.

ROCKY HOLCOMB, *et al.*,
*Defendants.*

1:25-cv-2384-MSN-WBP

**MEMORANDUM OPINION**

Proceeding *pro se*, pretrial detainee Benson Phillip Gatu Njuguna ("Plaintiff") filed this action under 42 U.S.C. § 1983. The Complaint alleges that officials at the Virginia Beach City Jail ("VBCJ") violated his constitutional rights through deliberate indifference to his medical needs, imposing unconstitutional conditions of confinement, and unauthorized disclosure of his medical information. ECF 1. This action is before the Court on the following motions: (1) a Motion/Request for Docket Seal (ECF 4); (2) a Motion to Appoint Pro Bono Attorney (ECF 5); (3) a Motion to Proceed *In Forma Pauperis* ("IFP") (ECF 6); (4) a Motion/Request to Seal Proceedings (ECF 11); (5) a Motion for Court Appointed Attorney (ECF 12); (6) a Motion to Certify Matter as Urgent (ECF 14); (7) a Motion for Discovery and Inspection (ECF 15); (8) a Motion to Certify Matter as Urgent and Seal Docket from Public (ECF 19); (9) a Motion for Discovery (ECF 18); (10) a Motion to Request for a Jury (ECF 20); (11) a Letter/Motion Requesting Court Order for U.S. Marshals to Serve Defendants (ECF 25); and (12) a Motion/Request to Add Defendant (ECF 27). As explained below, the Complaint currently fails to state a claim, and Plaintiff will be directed to amend it. The Motion to Proceed IFP will be conditionally granted, and all remaining motions will be denied.

## I. SCREENING UNDER 28 U.S.C. § 1915A(A)

### A. Background

The Complaint describes several events that allegedly occurred at VBCJ in October and November of 2025. ECF 1. First, the Complaint states that when Plaintiff arrived at VBCJ, he informed officials about his history of seizures, but they still assigned him to a top bunk. *Id.* at 4. Plaintiff later had a seizure while climbing to the top bunk and he fell and injured his head and hip. *Id.* Second, the Complaint asserts that VBCJ officials placed Plaintiff in crowded cells where he had to sleep on a mattress on the floor close to the toilet. *Id.* at 8. Third, the Complaint states that officials provided Plaintiff with only one jumpsuit and slip-ons when he arrived at VBCJ and told him that he would have to purchase additional clothing from the canteen. *Id.* at 10. Fourth, the Complaint asserts that medical staff exposed Plaintiff's medical information that is protected under the Health Insurance Portability and Accountability Act ("HIPAA") and the Prison Rape Elimination Act ("PREA"). *Id.* at 10–11.

### B. Section 1915A Screening Standard

Because Plaintiff is a pretrial detainee, his Complaint is subject to screening under 28 U.S.C. § 1915A(a) to determine if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(a), (b). The Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014) (quoting *Iqbal*, 550 U.S. at 678).

**C. Fourteenth Amendment Standard**

As Plaintiff is a pretrial detainee, his claims regarding the adequacy of medical attention and the conditions of his confinement are governed by the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979). The Fourteenth Amendment "protects pretrial detainees from governmental action that is not rationally related to a legitimate nonpunitive governmental purpose or that is excessive in relation to that purpose." *Short v. Hartman*, 87 F.4th 593, 608-09 (4th Cir. 2023) (cleaned up).

To state a due process claim based on deliberate indifference to a medical need, a pretrial detainee must plead

> that they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611. Similarly, to state a claim for deliberate indifference based on conditions of confinement, a plaintiff must allege (1) "deprivation of a basic human need that is objectively sufficiently serious" to generate (a) "a serious or significant physical or emotional injury resulting from the challenged conditions," or (b) "a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions," and (2) that the defendant " acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025) (cleaned up).

**D. Individual Claims**

*1. Deliberate Indifference to Medical Needs*

The Complaint alleges that VBCJ officials were deliberately indifferent to Plaintiff's serious medical needs in violation of the Fourteenth Amendment by assigning him to a top bunk

bed after he informed officials that he has a history of seizures. *Id.* at 4. Plaintiff then allegedly had a seizure on November 11, 2025, while climbing to his top bunk and fell and injured his head and hip. *Id.* at 4–5. He did not receive medical care following the seizure. *Id.* at 5.

The Complaint alleges that Plaintiff informed Defendants, specifically medical staff, deputies, and a sergeant, that he has issues with short-term loss of memory, loss of concentration, and seizures (ECF at 4); however, the Complaint does not allege that Plaintiff informed Defendants that he could suffer injuries if assigned to a top bunk or that Defendants otherwise knew that he was at risk of injury from a fall. Further, the Complaint lumps multiple Defendants together and seems to assert that each had notice of his condition and caused him to be on a top bunk, but does not contain facts to support these allegations. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (holding that to establish personal liability under § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights"). The Complaint does not identify which Defendants were responsible for Plaintiff's bunk placement and instead states that "the facility" assigned him to a top bunk. *Id.* at 4. Therefore, the Complaint does not allege that the individuals responsible for his bunk placement were aware of his medical needs and his risk of falling but failed to accommodate them. The Complaint also asserts that Sergeants Faust and J. McBriddle later told Plaintiff that they are used to people faking illnesses and thus barely take them seriously. *Id.* at 5; *see also* ECF 8 (amending the Complaint to remove Defendant Sergeant Effer and replace with Defendant Sergeant J. McBriddle). These statements by Sergeants Faust and J. McBriddle are insufficient to show that either sergeant knew about Plaintiff's medical conditions or that they were involved in assigning him to a top bunk.

In addition, the Complaint asserts that on the date of his seizure, Plaintiff was nauseated, weak, and had a severe headache, and he asked Deputy McLaughlin to see a nurse urgently and

Deputy McLaughlin said that he would call a nurse. ECF 1 at 4. Plaintiff then attempted to climb up to his bed and suffered a seizure. *Id.* at 4–5. Plaintiff's cellmates tried to get the deputy's attention but were unable to do so. *Id.* at 5. When another officer came for rounds, Plaintiff's cellmates told the officer what happened, after which the officer asked for Plaintiff's details to call medical, but a nurse never came. *Id.*

Construing the Complaint liberally because Plaintiff is *pro se*, it appears that he is arguing that Deputy McLaughlin and the other officer were deliberately indifferent to his serious medical needs right before and immediately after the seizure. To state a claim based on deliberate indifference to a medical need against non-medical personnel, a plaintiff must make showings. *Sosa v. Hill*, No. 1:24CV499 (DJN), 2025 WL 864291, at *10 (E.D. Va. Mar. 19, 2025). In such cases, the plaintiff must also demonstrate that defendants "(1) failed promptly to provide an inmate with needed medical care, (2) deliberately interfered with the prison doctors' performance, or (3) tacitly authorized or were indifferent to the prison physicians['] constitutional violations." *Id.* (internal quotation marks omitted). Even assuming both officers knew about Plaintiff's medical conditions, he has not shown that they were deliberately indifferent to his medical needs. Rather, Deputy McLaughlin told Plaintiff that he would call a nurse after Plaintiff explained his symptoms. *Id.* at 4. Similarly, when the officer doing rounds arrived at Plaintiff's cell and learned that he had a seizure, the officer took Plaintiff's information to call medical. *Id.* at 5. That a nurse never arrived is not in itself sufficient to show that the *officers* failed to act in such a way that "posed an unjustifiably high risk of harm" to Plaintiff. *Short*, 87 F.4th at 611. In addition, Plaintiff does not allege that he was harmed by the delay or lack of medical care. Plaintiff therefore has not sufficiently alleged a claim of deliberate indifference to a medical need against Defendants.

2. *Overcrowding*

The Complaint also asserts that Plaintiff was placed in a cell with two other people when it should have housed only two people total, and he was later placed in a cell with three other individuals. ECF 1 at 8. As a result, Plaintiff had to sleep on a mattress on the floor with bedsheets and a single blanket "with full blown Air Conditioner on." *Id.* Due to the crowding, "it was impossible to walk in the cell without walking on inmate mattresses and sheets and neither was it possible to use the toilet without standing on mattresses and sheets meaning the slightest splash of urine during nature calls and splash of toilet water landed on his bedding." *Id.*

Double or triple celling of inmates is not *per se* punishment and is therefore not a violation of Plaintiff's constitutional rights. *See Bell*, 441 U.S. at 541. Where overcrowding is accompanied by unsanitary and dangerous conditions, however, it can constitute a violation of a detainee's Fourteenth Amendment rights, provided it causes genuine hardship amounting to punishment. *See id.* at 542; *Williams v. Griffin*, 952 F.2d 820, 824–25 (4th Cir. 1991) (holding that unsanitary and dangerous conditions may meet the more restrictive Eighth Amendment standard for cruel and unusual punishment). Here, Plaintiff has not shown that the triple or quadruple celling at VBCJ resulted in the deprivations of a human need such as essential food, medical care, or sanitation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Though Plaintiff asserts that the cells were cold due to air conditioning and having a mattress on the concrete, he does not contend that Defendants deprived him of blankets such that they effectively deprived him of warmth. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("*Some* conditions of confinement may establish a[ constitutional] violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need

such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." (emphasis in original) (citation omitted)).

Plaintiff's exposure to urine on his bedding could yield a different result. *See Williams*, 952 F.2d at 825 (finding that allegations of cell toilets constantly coated with urine, four showers for 96 inmates with floors flooded with sewage, and deprivation of blankets cumulatively raised issues with respect to prison conditions). But, even if such conditions amount to an objectively serious deprivation of a human need, Plaintiff has not alleged that Defendants knew or should have known about the conditions and failed to act. *See Hammock*, 146 F.4th at 360 (explaining that a pretrial detainee must plead that a defendant "failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"). For instance, Plaintiff does not contend that he complained about the conditions, or that any of the Defendants should have been aware about the urine issue. Therefore, Plaintiff has not stated a claim for a Fourteenth Amendment violation based on overcrowding.

*3. Inadequate Clothing*

The Complaint also states that when Plaintiff arrived at VBCJ, he was only given one jumpsuit and slip-ons, and he was told to keep the boxers and t-shirt that he wore. ECF 1 at 10. Plaintiff asserts that VBCJ requires detainees to buy additional sets of clothes from the canteen rather than providing additional sets. *Id.* Deprivation of adequate clothing may amount to a constitutional violation if it is "sufficiently serious" and the official has acted with "deliberate indifference 'to inmate health or safety.'" *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 298, 302-03). But Plaintiff has not alleged facts to show that he was denied clothing by Defendants as he asserts that he could choose to purchase additional clothing from the canteen. *Cf. Hancock v. Avery*, 301 F. Supp. 786, 789 (M.D. Tenn. 1969) (finding the imposed punishment violated basic

standards of human decency when, in part, "plaintiff [was not] permitted to wear clothing of any kind and [was] being forced to remain in the cell entirely nude"). Moreover, Plaintiff has not shown that being provided only one jumpsuit constitutes a punishment in violation of the Fourteenth Amendment. He has not alleged that his clothing was inadequate for the conditions in the jail, that the practice of giving him only one jumpsuit was unhygienic or posed a risk to his health or safety, or that Defendants acted with deliberate indifference to a potential risk caused by providing only one set of clothing. *See Moore v. Warden at KMCC*, No. 7:23-CV-00493, 2025 WL 897553, at *2 (W.D. Va. Mar. 24, 2025) (explaining that "[c]ourts have routinely held . . . that wearing dirty clothes, although unpleasant, is not a deprivation serious enough" to support a violation of the objective prong of the deliberate indifference standard). Therefore, Plaintiff has failed to state a constitutional violation based on being deprived of adequate clothing.

*4. Exposure of Information in Violation of HIPAA and PREA*

The Complaint also asserts that medical staff exposed Plaintiff's medical information that is protected under the HIPAA and PREA. The HIPAA regulations are enforceable by the Secretary of Health and Human Services, and such regulations do not provide a private cause of action to individuals for enforcement of the statute's provisions. 42 U.S.C. § 1320d-6(b); *see also Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (holding that HIPPA does not create a private right of action). Plaintiff therefore cannot bring a claim for an alleged HIPAA violation.

Further, Plaintiff has not asserted sufficient facts to satisfy his claim that Defendants violated his Fourth Amendment rights based on sexual harassment or abuse within the meaning of the PREA. Plaintiff asserts that deputies asked him PREA questions loudly and openly (ECF 1 at 11), but this is not sufficient to rise to the level of sexual harassment within the meaning of PREA. *See, e.g.*, *Johnson v. Robinette*, 105 F.4th 99, 120 (4th Cir. 2024) (holding that strip searches,

including those that involved a momentary grabbing or touching of an inmate's genitals or buttocks during an otherwise penologically-justified strip search for contraband, does not rise to the level of sexual assault within the meaning of PREA and consequently was not a violation of the inmate's Fourth Amendment rights). Rather, the facts as alleged indicate that the deputies were acting in accordance with the regulations implementing PREA. *See* 28 C.F.R. § 115.141(b) ("In lockups that are utilized to house detainees overnight, all detainees shall be screened to assess their risk of being sexually abused by other detainees or sexually abusive toward other detainees."). In any event, as with HIPAA, PREA does not grant litigants a private cause of action or enforceable rights. *See Hamilton v. Collins*, No. 3:20CV504, 2022 WL 108410, at *4 (E.D. Va. Jan. 11, 2022). Therefore, Plaintiff has failed to state a claim for a violation of his Fourth Amendment rights based on noncompliance with HIPAA or PREA.

In sum, the Court will dismiss Plaintiff's HIPAA and PREA claims with prejudice because Plaintiff does not have a private right of action to bring claims under these statutes. The Court will dismiss the Plaintiff's deliberate indifference claims without prejudice.

## II. JOINDER

In addition to failing to state a claim upon which relief may be granted, the Complaint impermissibly joins unrelated parties and claims in the same action. *Jones v. Rickman*, No. 5:18-cv-00181-FDW, 2019 WL 2057271, at *2 (W.D.N.C. May 9, 2019) (a complaint "may not [assert] unrelated claims against unrelated parties in a single action"). Under Federal Rule of Civil Procedure 20(a)(2), claims against multiple defendants may be joined in one civil action only if (1) the claims arise out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2). Rule 20 does not authorize a plaintiff to add claims "against different parties [that] present[] entirely

different factual and legal issues." *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting *Lovelace v. Lee*, No. 7:03CV00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007)). "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" *Id.* (quoting *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007)). The Complaint's allegations concern nine different Defendants who allegedly took or failed to take separate and distinct actions involving deliberate indifference to medical needs, overcrowded prison conditions, distribution of clothing, and unauthorized disclosure of medical information. Accordingly, the Complaint fails to comply with Rule 20.

Plaintiff will be granted leave to amend his Complaint to comply with Rule 20. It follows that Plaintiff's motion to amend his Complaint to add an additional Defendant (ECF 27) will be denied as moot. Plaintiff is advised that if he wants to proceed against all nine (or ten) Defendants, he must either file a particularized complaint that satisfies the joinder rules described above or file separate complaints for each alleged event, which will require him to pay the $405 due in case initiation fees or apply to proceed IFP in each such action.[1] To the extent that Plaintiff files an amended Complaint that also runs afoul of the federal joinder rules, the Court will exercise its discretion to drop all parties from this action, excepting those who are properly joined with the first party named in the pleading. *See Loney v. Wilder*, No. 3:08CV820, 2011 WL 1827440, at *3 (E.D. Va. May 12, 2011) (employing a similar procedure); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (prisoner's complaint that failed to observe the requirements of Rule 20(a)(2) with

---

[1] Even if Plaintiff is granted permission to proceed IFP, he will still "be required to pay the full amount of a filing fee" in installments because he is a prisoner. 28 U.S.C. § 1915(b)(1)

respect to joinder of parties "should be rejected . . . either by severing the action into separate lawsuits or by dismissing improperly joined defendants . . ." (citations omitted)).

## III. MOTIONS

Since filing his Complaint, Plaintiff has filed twelve motions that will each be addressed in turn.

### A. Motion to Proceed IFP

First, Plaintiff submitted a Motion to Proceed IFP, but he has not yet satisfied his financial obligations. Plaintiff must still consent to the withdrawal of funds from his inmate trust account. The Court will additionally request up-to-date financial records from Plaintiff's institution of confinement.[2]

### B. Motions to Seal

Plaintiff also filed three motions requesting that the Court seal the docket in this action. ECF 4, 11, 19. "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). This right arises out of both the First Amendment and common law, with the common law right affording less substantive protection to the interest of the press and the public than the First Amendment. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Under the less stringent common law standard, this right "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Id.* An interest in protecting sensitive information may outweigh the public's interest in access. *See id.*; *Langley v. Director, Dep't of Corr.*, No. 2:09cv436, 2010 WL 2483876, at *2 (E.D. Va. May 28, 2010)

---

[2] It is the Court's practice to request from the relevant correctional institution information regarding a plaintiff's inmate trust account balance even when the plaintiff has himself submitted trust fund account statements.

(granting motion to seal "personal and sensitive information regarding [the petitioner's] mental health and medical treatment").

Plaintiff argues in his motions that the docket should be sealed from public access or his name should be sealed. ECF 4, 11. Plaintiff asserts that he is suing the Sheriff of the city in which he and his wife live and he fears retaliation either in jail or upon his release. ECF 4. The motions do not, however, point to any sensitive information contained in the record that could be compromised or spread to the public if not sealed. *Cf. Langley*, 2010 WL 2483876, at *2. Therefore, Plaintiff has not shown that sealing his name or documents outweighs the public's interest in access to the docket. Moreover, Plaintiff has not asserted that any specific exhibit should be sealed, and he has not shown that such a drastic step as sealing the record as a whole is warranted. *See generally Ashcroft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (holding that a district court must "consider less drastic alternatives to sealing the documents").

**C. Motions for Appointment of Counsel**

Plaintiff also moves for the Court to appoint him counsel. ECF 5, 12. "District courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so 'where the case of an indigent person presents exceptional circumstances.'" *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989)). "[A] district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel." *Id.* "That inquiry requires the court to determine (1) whether the plaintiff 'has a colorable claim' and (2) considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff 'lacks

the capacity to present it.'" *Id.* (quoting *Whisenant*, 739 F.2d at 163). "If both questions are answered affirmatively, the case presents exceptional circumstances." *Id.*

Plaintiff is not entitled to the appointment of counsel in this action because he does not appear to lack the capacity to present his claim, at least at this stage of the proceedings. Plaintiff presents his claims in an organized Complaint containing legal argument and citations to relevant caselaw. ECF 1. Though Plaintiff's Complaint contains multiple unrelated claims, these claims all appear to be objectively simple. *Id.* For these reasons, Plaintiff's requests for appointment of counsel (ECF 5, 12) will be denied without prejudice to later renew, if appropriate.

**D. Miscellaneous Motions**

Plaintiff also moves for the Court to order the U.S. Marshals to serve Defendants and for the Court provide him with a stamped copy of the Complaint and all motions submitted by him in this action. ECF 25. As Plaintiff will be required to submit an amended Complaint that states a claim, his request for the Court to order the U.S. Marshals to serve Defendants will be denied as premature. *See, e.g.*, *Payne v. Sengel*, No. 3:12cv852, 2013 WL 4759060, at *3 (E.D. Va. Sept. 4, 2013) ("[Plaintiff's] action remains in the screening stage, thus rendering service premature." (citation omitted)). Inasmuch as Plaintiff is requesting documents from his own case file, he may contact the Clerk of this Court and identify what items that he seeks by referring to the appropriate docket entry number(s), and pay the required copying fee of $.50 per page.[3] *See United States v. MacCollom*, 426 U.S. 317, 321 (1976) ("[E]xpenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress.").

[3] *District Court Miscellaneous Fee Schedule*, U.S. Courts https://www.uscourts.gov/court-programs/fees/district-court-miscellaneous-fee-schedule (last visited Aug. 10, 2026) ("For reproducing any record and providing a copy in paper form, $.50 per page.").

Plaintiff next moves for discovery and inspection (ECF 15, 18), and filed a Motion to Request for a Jury. ECF 20. These motions (ECF 15, 18, 20) will be denied as premature as Plaintiff must submit a particularized complaint and provide an opportunity for Defendants to answer before proceeding to discovery and trial. *See, e.g.*, *McCamey v. Smith*, No. C17-433-RSL-MAT, 2017 WL 2664588, at *4 n.2 (W.D. Wa. May 17, 2017) (finding plaintiff's motion for jury trial premature where it was filed prior to service and receipt of an answer); *Piggee v. O'Brien*, No. 7:08-cv-474, 2008 WL 5054133, at *3 (W.D. Va. Nov. 26, 2008) (finding prisoner plaintiff's discovery requests premature "because the defendants have not yet filed an answer").

Finally, Plaintiff moves for the Court to certify this matter as urgent. ECF 14, 19. In light of this Order, these motions (ECF 14, 19) will be denied as moot.

## IV. CONCLUSION

For the reasons above, the Court will DISMISS Plaintiff's claims under HIPAA and PREA with prejudice. As for Plaintiff's deliberate indifference claims, Plaintiff will be granted leave of thirty (30) days to file an amended complaint that states a claim upon which relief can be granted and complies with Federal Rule of Civil Procedure 20. Plaintiff's Motion for Leave to Proceed IFP (ECF 6) will be conditionally GRANTED, and Plaintiff will be ordered to sign and return a Consent to Collection of Fees from Inmate Trust Account form, and the Clerk will request Plaintiff's institution to complete an Inmate Account Report Form detailing the contents of Plaintiff's inmate trust account. Plaintiff's Motion to Add Defendant (ECF 27) and his Motion to Certify Matter as Urgent (ECF 14) will be DENIED as moot. His Letter/Motion Requesting Court Order for U.S. Marshals to Serve Defendants (ECF 25), Motion for Discovery and Inspection (ECF 15), Motion for Discovery (ECF 18), and Motion to Request for a Jury (ECF 20) will be DENIED as premature. Plaintiff's Motion/Request for Docket Seal (ECF 4), Motion/Request to Seal

Proceedings (ECF 11), and Motion to Certify Matter as Urgent and Seal Docket from Public (ECF 19) will also be DENIED. Finally, Plaintiff's Motion to Appoint Pro Bono Attorney (ECF 5) and Motion for Court Appointed Attorney (ECF 12) will be DENIED WITHOUT PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Michael S. Nachmanoff
United States District Judge

August 19, 2026
Alexandria, Virginia